UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY ROBERG,

    Plaintiff,

  v.                                                      Case No. 13-C-1075

CAPTAIN NANCY TIERNEY,
TED CZESKLEBA,
SERGEANT MURK, and
PATRICK MELMAN,

    Defendants.

## SCREENING ORDER

The plaintiff, who is incarcerated at Oshkosh Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed *in forma pauperis*.

The plaintiff is required to pay the statutory filing fee of $350.00 for this action. *See* 28 U.S.C. § 1915(b)(1). If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed *in forma pauperis*. The plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2). The plaintiff has been assessed and paid an initial partial filing fee of $16.94 in this action.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In other words, each defendant is entitled to know what he is accused of doing or not doing that justifies naming him or her in a federal lawsuit. However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must

2

be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The facts alleged arise out of an incident that occurred while Roberg was an inmate at Sanger B. Powers Correctional Center (SBPCC). Roberg contends that on November 4, 2012 Warren Walker, an inmate serving breakfast, handed him a piece of toast at the prison servery while not wearing sanitary gloves. Roberg complained to Walker about his failure to wear gloves while serving food, and Walker responded by refusing to serve him breakfast. Roberg complained to Sergeant Murk, who said he wasn't supposed to be eating then anyway and "blew it off as a frivolous matter." (Compl. ¶ 13.) Roberg then submitted a "two-page request slip complaint" to Captain Nancy Tierney and waited for a response. (Id. ¶ 14.) Roberg avoided going to breakfast while awaiting a response from Tierney to avoid a conflict with Walker, but none came. On November 11, 2012, he returned to the servery for breakfast, but Walker again refused to serve him because he was too late and tried to instigate a fight. Roberg alleges that Ted Czeskleba, the "Centers Food Service Leader," violated a prison confidentiality policy by telling Walker that

3

Roberg had filed the complaint, and that this breach of confidentiality led Walker to confront him and attempt to instigate a fight on November 11, 2012. Roberg submitted another complaint through the Inmate Complaint Review System (ICRS) on November 11, 2012.

The following day Roberg met with Czeskleba to discuss his conflict with Walker. Roberg claimed he met with several other kitchen workers who told him they had seen Walker use the restroom and not wash his hands before serving food. According to Roberg, they told him Walker wanted to be removed from the kitchen so he could work on the outside of the center. The complaint is silent as to whether Roberg repeated these allegations to Czeskleba. In any event, Roberg claims Czeskleba found no fault with Walker serving food without gloves but stated that he would address Roberg's concerns with Walker. Roberg claims Czeskleba informed Tierney that Roberg was withdrawing his complaint, even though Roberg did not authorize him to do so. He further contends that Czeskleba violated his rights to confidentiality when Czeskleba spoke to Walker on November 12, 2012, and that this breach resulted in a confrontation between Roberg and Walker on November 19, 2012. Roberg alleges that Walker confronted him about filing the ICRS complaints and swung a chair at him. As a result of this altercation, Roberg contends that he was transported to Green Bay Correctional Institution and placed in segregation.

Roberg first claims that Defendants violated his due process rights by failing to properly investigate and resolve his complaints of unsanitary conditions and that Defendants' failure to resolve his complaints in a timely manner led to the confrontation with Walker on November 19, 2012. Specifically, Roberg claims that prison officials failed to respond to his ICRS complaints within five days, as required by Wis. Admin. Code DOC § 310.11(2). The Seventh Circuit has held that "[a] state-created prison grievance procedure is simply a procedural right and does not confer

4

any substantive right upon an inmate," and further, it does not create a constitutionally protected liberty interest. *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001). Therefore, Roberg's claims that Defendants violated administrative procedures, breached his confidentiality in the grievance process, and failed to adequately investigate his complaints, in and of themselves, are insufficient to establish the violation of a constitutional right for purposes of a Section 1983 claim. However, this does not mean that prison officials are free to violate administrative regulations with impunity. Defendants' alleged failure to follow administrative regulations may still be considered in determining whether Defendants were "deliberately indifferent" to Roberg's safety, as outlined below.

Roberg also alleges that Tierney and Czeskleba used the prison grievance process to harm him and take away benefits. Roberg contends that he received 60 days disciplinary segregation for committing battery, in part because Tierney and Czeskleba did not attend his disciplinary hearing or submit written statements on his behalf. He also claims that as a result of this hearing, he lost his work release job, community custody status, early release benefits, and the ability to pay his fines. However, even if the court assumes that Roberg had a constitutionally protected interest in some of these benefits, he still fails to state a due process claim because he does not allege that any of the Defendants made the decisions to take away his benefits. Instead, Roberg's claim is based on his allegation that Tierney and Czeskleba were required to attend his disciplinary hearing and give testimony about the altercation with Walker. In fact, the regulations do not require staff members to attend. *See* Wis. Admin. Code DOC § 303.81(1). The regulation permits a prisoner to request that an officer appear as a witness, but it does not require the officer to attend or submit

5

a written statement. *Id.* Thus, Roberg has failed to state a due process claim against Defendants for the loss of prison benefits.

The court now turns to Roberg's Eight Amendment claims. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *See, e.g., Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). Correctional officers have a duty to take reasonable measures to guarantee inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A correctional officer's failure to intervene may constitute deliberate indifference; however, the plaintiff must show that the defendants were actually aware of a substantial risk of serious injury posed by another inmate and failed to take appropriate steps to protect him from that risk. *Whaley v. Erickson, et. al.*, 339 Fed. Appx. 619, 622 (7th Cir. 2009) (citing *Farmer*, 511 U.S. at 847); *see also Harper v. Ryker*, No. 11-cv-406-MJR, 2012 WL 2412155, at *5 (S.D. Ill. Jun. 26, 2012) ("A plaintiff . . . must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety." (citing *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (emphasis in original)).

Even in construing the facts alleged most favorably to the plaintiff, it is clear that Roberg has not established the basis for an Eighth Amendment violation. Roberg's complaints to prison officials about Walker's actions in the kitchen did not give notice of any substantial risk of harm posed by Walker. Although Roberg contends that Walker attempted to instigate a fight with him on November 11, 2012, Roberg does not allege that he reported any threats of violence to Czeskleba in the meeting on November 12, 2012, or to any other prison officials prior to the altercation on November 19, 2012. In addition, the fact that prison officials failed to respond to his ICRS

6

complaints within five days does not demonstrate deliberate indifference to Roberg's personal safety, as Roberg does not allege that his ICRS complaints contained anything more than complaints about food service and sanitation. Roberg may have feared that Walker would assault him, but since he does not allege that he ever voiced this concern to prison officials prior to the altercation on November 19, 2012, he fails to state a claim for deliberate indifference for Defendants' failure to prevent his altercation with Walker.

Similarly, Roberg does not state an Eighth Amendment claim by asserting that he was denied meals. The fact that Walker handed Roberg piece of toast without wearing a glove is not enough to state a claim under the Eighth Amendment. While perhaps a violation of DOC rules governing food preparation and handling, it does not by itself constitute cruel and unusual punishment. Moreover, Walker is an inmate not a state actor. Roberg contends that after Walker denied him breakfast on November 4, 2012, Sergeant Murk ignored his complaints and refused to help him get served. He then voluntarily skipped breakfast until November 11, 2012 as he waited for Tierney to respond to the complaint he filed November 4, 2012. On November 11, 2012, Walker again refused to serve him. The Supreme Court has held that the Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement, including ensuring that inmates receive adequate food. *Farmer,* 511 U.S. at 832. A valid claim of deliberate indifference under the Eighth Amendment has both objective and subjective elements. *Id.* at 834. To state a claim an inmate must first allege that he suffered a deprivation sufficiently serious to have denied him "the minimal civilized measure of life's necessities." *Id.* Second, the inmate must allege that the defendants were subjectively aware that their conduct was creating a substantial risk of serious harm. *Id.* at 834, 837. The Seventh Circuit has held that withholding food from prisoners is a deprivation of a basic need

that in some circumstances satisfies the objective aspect of the *Farmer* test, depending on the amount and duration of the deprivation. *See Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). Regardless of whether Roberg missed enough meals to satisfy the "serious deprivation" prong, he only alleges that a prison official denied him a meal on November 4, 2012. Roberg may have voluntarily missed other meals between November 4, 2012, and November 10, 2012, but he does not allege that he ever reported missing these meals to prison officials. Similarly, he does not allege that he contacted a supervisor after Walker denied him a meal on November 11, 2012. Even if he did, missing a few meals does not constitute cruel and unusual punishment. Roberg's claim based on denial of meals must be dismissed.

Finally, Roberg contends that Defendants conspired against him and engaged in a cover-up regarding the handling of his ICRS complaints and grievances. A prisoner may state a claim under Section 1983 if he can show that prison officials conspired to deny him his constitutional rights. *See Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). Roberg's conspiracy theory is unclear, though he asserts that Superintendent Patrick Melman engaged in a cover-up by failing to properly respond to his ICRS complaints. This assertion alone is insufficient to state a claim. Moreover, since prison grievance procedures do not create a constitutional liberty interest, Roberg cannot state a conspiracy claim by asserting that Defendants conspired to deny him the full benefits of the prison grievance process. *See id.* ("[T]here is no constitutional violation in conspiring to cover up an action which does not itself violate the constitution.") Accordingly, all of Roberg's claims must be dismissed.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $333.06 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined.

Dated at Green Bay, Wisconsin, this 15th day of October, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court